### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DAMION M. THOMAS,**

**Petitioner,**

**v.**                                            **Civil Case No. 13-cv-689-DRH**
                                                 **Criminal Case No. 05-cr-30114-DRH**

**UNITED STATES OF AMERICA,**

**Respondent.**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.        Introduction

This matter is before the Court on petitioner Damion Thomas' motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1). For the reasons stated below, Thomas' motion is **DENIED**.[1]

On September 9, 2005, Thomas pled guilty to one count of felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1).  This Court sentenced Thomas on January 18, 2006 (Cr. Doc. 22).  Pursuant to 18 U.S.C. § 924(e), the Court sentenced Thomas as an "armed career criminal" to a mandatory minimum sentence of fifteen years of incarceration (Cr. Doc. 25, amended at Doc. 29).

---

[1] Having closely examined the record before it, the Court concludes an evidentiary hearing is not warranted. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *see also* Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings.

On direct appeal, Thomas challenged the constitutionality of his sentence, arguing that it was based on recidivism facts not found by a jury beyond a reasonable doubt. Thomas acknowledged that his contention was contrary to controlling precedent, *see e.g. Harris v. United States*, 536 U.S. 545, 568 (2002) (constitutionally permissible for a sentencing judge to make findings of fact that lead to an enhanced mandatory minimum); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (holding that prior convictions need not be charged in the indictment or proved beyond a reasonable doubt), and raised the issue, "strictly to preserve it for further review" (Cr. Doc. 32, *United States v. Thomas*, No. 06-1404 (7th Cir. Mar. 21, 2006)). The Seventh Circuit summarily affirmed this Court and upheld the sentence (*Id.*).  On June 19, 2006, the Supreme Court denied Thomas' petition for a writ of certiorari. *See Thomas v. United States*, 547 U.S. 1217, 126 S. Ct. 2906 (June 19, 2006)).

On July 16, 2013, Thomas filed the present motion to vacate, set aside, or correct his sentence (Doc. 1).  He argues that his sentence is unconstitutional in light of two recent Supreme Court decisions—*Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

## II.    Legal Standard

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).  Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Moreover, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged

error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

In his reply brief, Thomas raises a claim of ineffective assistance of counsel (Doc. 5).  Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694 (1984).  To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  To satisfy the second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696.   A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer,* 234 F.3d 319, 325 (7th Cir. 2000).  Thus, a petitioner must overcome a heavy burden to prove that his attorney was

constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

## II.   <u>Analysis</u>

### A. The Armed Career Criminal Act

This Court sentenced Thomas to an enhanced term of imprisonment pursuant to the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e). The ACCA provides a sentencing enhancement for federal defendants convicted under 18 U.S.C. § 922(g) (unlawful possession of a firearm) who already have three prior convictions for "violent felon[ies]," explicitly including "burglary." *Id.*  As this Court found, Thomas' three predicate felonies included one conviction for aggravated discharge of a firearm, and two convictions for residential burglary. Sentencing enhancement under the ACCA increases the mandatory minimum sentence to fifteen years of incarceration. *Id.*   Apart from any sentencing enhancement, Thomas' conviction for felon in possession of a firearm bears a maximum penalty of ten years of incarceration. 18 U.S.C. § 922(g).  Thomas' petition argues that he should be resentenced, without the ACCA enhancement, in light of the Supreme Court's decisions in *Descamps v. United States* and *Alleyne v. United States*.

### B. *Descamps v. United States*

Thomas first argues that the application of the ACCA enhancement to his sentence is unconstitutional in light of *Descamps v. United States*, 133 S. Ct.

2276 (2013).[2]   Decided by the Supreme Court on June 20, 2013, *Descamps* addressed the question of what burglary convictions may qualify to implicate the ACCA sentencing enhancement. 133 S. Ct. at 2282.   The general rule for classifying burglary convictions under the ACCA was set out by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990).  Because the text of the ACCA does not define "burglary," *Taylor* held that sentencing courts must compare the elements of the predicate conviction (whether or not formally labeled "burglary") with the elements of "generic burglary." 495 U.S. at 599-600.  "Generic burglary" is defined as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599.

Generally, if the statutory elements of the predicate offense are *broader* than generic burglary, courts may not refer to any other sources (e.g. indictments or jury instructions) to determine whether the defendant actually committed all the elements of generic burglary. *Id.* at 602.  This is known as the "categorical approach." *Descamps*, 133 S. Ct. at 2281.  *Taylor* does allow sentencing courts to deviate from the categorical approach in certain narrowly defined circumstances.

---

[2] The United States has affirmatively waived any retroactivity defense to Thomas' claim under *Descamps v. United States*.  (Doc. 4 at 4 n.1).  The Supreme Court has held that the issue of retroactivity is not jurisdictional, and may be waived.  *Collins v. Youngblood*, 497 U.S. 37, 41 (1990).  The United States' affirmative waiver of this defense removes it from the case.  *Wood v. Milyard*, 132 S. Ct. 1826, 1833 n.5, 1835 (district court abuses its discretion by considering a defense that has been affirmatively waived).  Therefore, this Court will not inquire into whether, absent such a waiver, *Descamps* is retroactively applicable on collateral review. *See* 28 U.S.C. § 2255(f).

Where a statute provides multiple *alternative* definitions of burglary,[3] a sentencing court is permitted to consult the indictment or jury instructions to determine whether the definition for which the defendant was actually convicted contains all the elements of generic burglary. *Taylor*, 110 S. Ct. at 602.   This limited exception has come to be known as the "modified categorical approach." *Descamps*, 133 S. Ct. at 2281.

The specific question in *Descamps* was whether a sentencing court may use the modified categorical approach in the case of an "indivisible" statute. In *Descamps*, one of the defendant's three prior convictions for purposes of ACCA enhancement was a burglary conviction under California Penal Code Ann. § 459. The California statute defined burglary as an entry into certain premises "with intent to commit grand or petit larceny or any felony." 133 S. Ct. at 2282. However, unlike the "generic" definition of burglary, the California statute did not require that the entry be unlawful.[4] *Id.*   And unlike the limited exception allowed by *Taylor*, the California statute did not set out *alternative* definitions of burglary, with one or more alternatives including all the elements of generic burglary.   Under the California statute, unlawful entry was *never* a required element of the crime.   The Supreme Court held that the modified categorical approach could not extend to an indivisible statute like California's without violating the defendant's Sixth Amendment rights. *Id.* at 2288.

---

[3] The *Taylor* Court provided the hypothetical example of a statute defining burglary as unlawful entry into either a building or an automobile—the former of which constitutes generic burglary, but the latter of which does not.  110 S. Ct. at 602.

[4] The Supreme Court noted that the California statute would include a broad range of criminal behavior not normally designated burglary, e.g. shoplifting. 133 S. Ct. at 2282.

Returning to Thomas' argument, he maintains that the ACCA enhancement of his sentence, relying on his Illinois convictions for residential burglary, is unconstitutional in light of *Descamps*.  This Court disagrees.  Thomas' sentencing enhancement is simply not analogous to the situation presented in *Descamps*.  Illinois' residential burglary statute, unlike the California statute at issue in *Descamps*, does not encompass any conduct broader than the elements of generic burglary.[5]  In fact, the language of the Illinois statute closely tracks the exact definition of generic burglary set out in *Taylor*.[6]  Residential burglary in Illinois *always* requires "an unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  495 U.S. at 599.  The district court did not use the modified categorical approach when it applied the ACCA enhancement to Thomas' sentence.  It did not need to.  The fact that Thomas was convicted of residential burglary under the Illinois statute is sufficient to establish that he

---

[5] Illinois' residential burglary statute reads as follows: (70 ILCS 5/19-3)
Sec. §19-3. Residential burglary.
(a) A person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft. This offense includes the offense of burglary as defined in Section 19-1.
(a-5) A person commits residential burglary when he or she falsely represents himself or herself, including but not limited to falsely representing himself or herself to be a representative of any unit of government or a construction, telecommunications, or utility company, for the purpose of gaining entry to the dwelling place of another, with the intent to commit therein a felony or theft or to facilitate the commission therein of a felony or theft by another.
[6] The most significant difference between the Illinois statute and the *Taylor* definition is the inclusion of subsection (a-5) of the statute, which specifies that an entry gained by means of false representation will support a conviction for residential burglary.  This subsection appears to do no more than clarify that entry under false pretenses is legally "unprivileged."  Thus, subsection (a-5) does not expand Illinois' definition of residential burglary to include any conduct outside the *Taylor* definition of generic burglary.  *See Taylor*, 495 U.S. at 599.  At any rate, subsection (a-5) was not added to the statute until an amendment in 2010.  2010 Ill. Legis. Serv. P.A. 96-1113 (S.B. 3684) (WEST).
All of Thomas' convictions under the statute occurred before 2006.

committed all the elements of generic burglary.  For these reasons, Thomas' claim based on *Descamps v. United States* is unavailing and will be denied.

## C. *Alleyne v. United States*

Thomas also argues that his sentencing enhancement is unconstitutional in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  *Alleyne* held that any fact that increases mandatory minimum sentences must to be submitted to a jury. *Id.* at 2158.  *Alleyne* is an extension of the Supreme Court's landmark decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court for the first time recognized a Sixth Amendment requirement that any fact increasing *maximum* sentences must to be submitted to a jury, and found beyond a reasonable doubt.

We note initially that Thomas' claim based on *Alleyne v. United States* is not properly before this Court unless the right recognized in *Alleyne* is retroactively applicable to cases on collateral review.   Generally, the statute of limitations for filing a collateral attack pursuant to 28 U.S.C. § 2255 is one year from the date the petitioner's conviction becomes final.  Thomas' conviction became final on June 19, 2006—the date his petition for certiorari was denied by the Supreme Court.  The present motion was not filed until July 16, 2013. However, the statute makes special provision for "[rights that have] been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).  In such cases, petitioners have one year from the date the right was first recognized by the Supreme Court to file collateral

attack. *Id.* Thomas filed his petition within one year of the date *Alleyne* was decided. Thus, we must address the question of whether the rule in *Alleyne* is retroactively applicable to cases on collateral review.[7]

The Seventh Circuit has recognized that "*Alleyne* establishe[d] a new rule of constitutional law." *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). According to the Supreme Court, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rule of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007); *Teague v. Lane*, 489 U.S. 288, 311 (1989).

Thomas argues that *Alleyne* is retroactive because it announces a substantive, not procedural, rule. (Doc. 1 at 5). We disagree. In *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002), the Seventh Circuit held that *Apprendi* was not retroactive. *Id.* at 842. In reaching this conclusion, the court found that the rule in *Apprendi* was not substantive: "*Apprendi* is about nothing but procedure— who decides a given question (judge versus jury) and under what standard (preponderance versus reasonable doubt)." *Id.* at 843. As an extension of *Apprendi*, the identical reasoning applies to *Alleyne*. Whereas *Apprendi* addressed facts that increase statutory maximum penalties, *Alleyne* addresses

---

[7] The Seventh Circuit has explicitly held that a successive collateral attack based on *Alleyne* may not be filed until (and unless) the Supreme Court declares *Alleyne* to be retroactive. *Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013). *Simpson* only addressed the issue of a *successive* collateral attack under § 2255(h)(2), leaving open the question of *initial* collateral attack under § 2255(f)(3). On initial collateral attack, district courts are free to make the retroactivity determination. *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001) ("A district judge may determine whether a novel decision of the Supreme Court applies retroactively, and thus whether a collateral attack is timely under…§ 2255.").

facts that increase mandatory minimums.  But *both* cases are about who decides a given question (judge versus jury) and under what standard (preponderance versus reasonable doubt).  Thus, like the rule in *Apprendi*, the rule announced in *Alleyne* is entirely procedural.

Nor do we find that the rule of *Alleyne* is a watershed rule of criminal procedure.  To qualify as a watershed rule of criminal procedure, a new rule must meet two requirements. *Whorton*, 549 U.S. at 418.  "First, the rule must be necessary to prevent an impermissibly large risk of inaccurate conviction.  Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.*  We note initially that the Supreme Court has never held a new constitutional rule to be a watershed rule of criminal procedure. *Id.* at 417-18.  In *Curtis*, the Seventh Circuit held that the *Apprendi* rule is not a watershed rule of criminal procedure because "findings by federal district judges are adequate to make reliable decisions about punishment." 494 F.3d at 843.  By the same rationale, we find that the rule established by *Alleyne* is not a watershed rule of criminal procedure.

Because the rule of *Alleyne* is neither substantive nor a watershed rule of criminal procedure, it is does not apply retroactively to a collateral proceeding.  Therefore, Thomas' claim based on *Alleyne* is not properly before this Court because the statute of limitations expired one year from the date his conviction became final. 28 U.S.C. § 2255(f).

However, even if we were to reach the merits of Thomas' *Alleyne* claim, he would not be entitled to relief. *Alleyne* held that any fact that increases mandatory minimum sentences must be pled in the indictment and submitted to a jury. 133 S. Ct. at 2158. The ACCA enhancement did increase the mandatory minimum sentence to which Thomas was subject. Apart from any sentencing enhancement, Thomas' conviction for felon in possession of a firearm bore a maximum penalty of ten years' imprisonment. After application of the ACCA enhancement, Thomas' conviction carried a mandatory minimum sentence of fifteen years of imprisonment. The government does not contend that the fact of Thomas' prior convictions was pled in the indictment or submitted to the jury. Instead, the government argues that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), creates an exception to the rule of *Apprendi* and *Alleyne* for sentencing enhancements based on prior convictions. *Almendarez-Torres* held that the Sixth Amendment does not require the fact of prior convictions to be pled in the indictment or submitted to the jury. 523 U.S. at 224.

Thomas argues that *Almendarez-Torres* has been overruled by *Alleyne*. (Doc. 1 at 4). We disagree. This Court is not free to *infer* that a controlling Supreme Court precedent has been overruled, solely on the basis that subsequent decisions of the Court cast doubt on its reasoning. "[I]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of

overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *cf. United States v. Eberhart*, 388 F.3d 1043, 1049 (7th Cir. 2004). In other words, unless the Supreme Court has expressly overruled *Almendarez-Torres*, we must follow that decision in this case.

Not only has the Supreme Court not expressly overruled *Almendarez-Torres*, it has repeatedly made clear that the case remains good law. *Almendarez-Torres* predates both *Apprendi* and *Alleyne*. In *Apprendi*, the Court explicitly declined to overrule *Almendarez-Torres*, choosing instead to "treat the case as a narrow exception to the general rule." *Apprendi*, 530 U.S. at 489-90. In *Alleyne*, the Court again recognized *Almendarez-Torres* as a "narrow exception...for the fact of a prior conviction" and again made clear that it was not overturning the decision. *Alleyne*, 133 S. Ct. at 2160 n.1; *see also United States v. Boyce*, 13-1087, 2014 WL 552808 (7th Cir. Feb. 13, 2014) ("Until the Supreme Court tells us otherwise, we will continue to apply *Almendarez–Torres*."). In sum, Thomas is mistaken when he asserts that *Almendarez-Torres* has been overruled. And because *Almendarez-Torres* remains good law, the sentencing court was not required to submit the fact of Thomas' convictions to a jury. Accordingly, Thomas' claim based on *United States v. Alleyne* will also be denied.

**D. Ineffective Assistance of Counsel**

Finally, Thomas raises a claim of ineffective assistance of counsel in his reply brief, on the grounds that his attorney did "not advis[e] him of the elements to convict for the ACCA offense." (Doc. 5 at 1). Thomas' ineffective assistance of

counsel claim is barred by the statute of limitations and is not properly before this Court.  Collateral attack pursuant to 28 U.S.C. § 2255 must be filed within one year of when the conviction becomes final.  As discussed above, Thomas' conviction became final on June 19, 2006.  He did not file the present petition until July 13, 2013—more than six years after the statute of limitations had expired.

Even if we were to reach Thomas' ineffective assistance claim, it would fail on the merits.  To prevail on his claim of ineffective assistance, Thomas must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *Strickland* further requires Thomas to demonstrate that "but for" his counsel's allegedly deficient performance, there is a reasonable probability that the result of his sentencing would have been different. *Id.* at 694.  That standard is not close to being met here.

Although Thomas' reply brief makes the aforementioned oblique reference to "the elements to convict for the ACCA offense," the subsequent paragraphs make clear that his ineffective assistance claim amounts to no more than a renewal of his *Descamps* and *Alleyne* claims. (Doc. 5 at 2-3).  *Strickland* requires that an attorney's performance be measured according to "counsel's perspective at the time" and without the "distorting effects of hindsight." 466 U.S. at 689.  By this measurement, it was obviously not unreasonable for Thomas' counsel to not raise claims based on *Descamps* and *Alleyne*, because those cases would not be

decided for another eight years.  And even if those claims somehow could have been raised, there is no reasonable probability that Thomas' sentencing would have come out differently.  This is so because, for all the reasons discussed above, neither *Descamps* nor *Alleyne* is applicable to Thomas' case.

### III.   **Certificate of Appealability**

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability has been granted. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009).  For a court to issue a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," meaning, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); 28 U.S.C. § 2253(c)(2).

For the reasons stated above, Thomas' claims do not warrant a certificate of appealability, as reasonable jurists would agree that the petition should not receive encouragement to proceed further. Therefore, the Court **DENIES** Thomas a certificate of appealability.

## IV.   <u>Conclusion</u>

For the reasons stated above, Thomas' motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence, is **DENIED** (Doc. 1). Thomas' claims are dismissed with prejudice. The Court shall not issue a certificate of appealability. The Clerk is instructed to close the file and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 15th day of April, 2014.

Digitally signed by David R. Herndon
Date: 2014.04.15 12:46:04 -05'00'

**Chief Judge**
**United States District Judge**